**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Suzan Masoud, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>**(Jury Trial Demanded)** |
| Marketplace Staffing Services, Inc., and Mitsubishi Polyester Film, Inc., | |
| Defendants. | |

**COMES NOW** the plaintiff, Suzan Masoud (hereinafter "Masoud" or "the plaintiff") and alleges the following in her complaint against Defendant Marketplace Staffing Services, Inc. (hereinafter "Marketplace"), and Defendant Mitsubishi Polyester Film, Inc. (hereinafter "Mitsubishi") (collectively, "the defendants").

## NATURE OF THE ACTION

1. This action arises out of Masoud's joint employment with the defendants.

2. In *Butler v. Drive Auto. Indus. Of Am.*, the Fourth Circuit held that the joint employment doctrine applies to Title VII of the Civil Rights Act of 1964. Under the *Butler* analysis, at the time of the events which give rise to her complaint, the plaintiff was employed by Marketplace and Mitsubishi, jointly. 2015 U.S. App. LEXIS 12188.

3. During her period of employment with the defendants, the plaintiff was subjected to and reported sexual harassment and racial discrimination to her supervisors at Mitsubishi and Marketplace, but her concerns never were addressed.

4.      In retaliation for the plaintiff's having reported sexual harassment and racial discrimination, she was terminated from her employment at Mitsubishi and escorted off Mitsubishi property by agents of the defendants.

## PARTIES

5.      The plaintiff is a female citizen and resident of Greenville County, South Carolina, and has been at all times relevant to the allegations of this complaint.  Further, the plaintiff is a person of Middle Eastern descent.

6.      Defendant Marketplace Services, Inc. is a South Carolina corporation, with offices at locations across the state of South Carolina, including a location in Greenville County.

7.      Defendant Mitsubishi is a South Carolina non-profit corporation headquartered and with its principal place of business in Richland County, Columbia, South Carolina, but doing business and with a manufacturing and shipping facility in Greenville County.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter and *in personam* jurisdiction pursuant to 28 U.S.C. §1331, and §1332, as the plaintiff resides in this judicial district; the defendants do business and maintain locations and employees in this district; and the events giving rise to the plaintiff's claims occurred in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the wrongful conduct at issue occurred within this judicial district.

## CONDITIONS PRECEDENT

10.     The plaintiff has exhausted her administrative remedies and met the necessary conditions precedent, including timeliness, deferral and all other jurisdictional requirements

necessary for the maintenance of the foregoing action, all of which are more fully described below.

11.     In or around August and September 2015, and as result of the discriminatory conduct of agents and servants of the defendants, which is described in full below, the plaintiff timely filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging harassment, discrimination, and retaliation based upon her race and gender against both the defendants.

12.     The plaintiff received a Notice of Right to Sue from the EEOC regarding the charges described above in Paragraph 11.  She has received Notice of Right to Sue as to each defendant, each dated March 31, 2016.  Those notices are attached as **Exhibit A and Exhibit B**.

13.     The plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received the Notices of Right to Sue described above in Paragraph 12.

## FACTUAL BACKGROUND AND ALLEGATIONS

14.     The allegations set forth above are realleged and incorporated herein by reference.

### Joint Employment

15.     In or around February 2014, the plaintiff was hired by Marketplace[1], a temporary employment and staffing agency, to work at Mitsubishi as a forklift operator.  Mitsubishi hires some employees directly and employs other individuals through temporary employment agencies such as Marketplace.

---

[1] Upon information and belief, Marketplace Staffing previously was known as Wellco Staffing when the plaintiff began her employment in February 2014.  Wellco subsequently was sold to HKA.  In December 2014, Marketplace Staffing bought HKA.

16. Marketplace and Mitsubishi each exercised a degree of control over different aspects of the plaintiff's employment.

17. The plaintiff was hired by Marketplace and paid by Marketplace. However, Mitsubishi determined the plaintiff's work schedule, conducted her job training, and was responsible for personnel issues such as harassment and discrimination.

18. Mitsubishi has a "no-tolerance" policy for sexual harassment. In addition, Mitsubishi's personnel policies prohibit retaliation, sexual harassment and discrimination of any kind.

### Mitsubishi's Employment of the Plaintiff

19. In or around March 2014, the plaintiff's trainer, Arlene Ayers ("Ayers"), asked her to attend a 9:00AM safety meeting called Safestart. The plaintiff was late to this meeting and her immediate supervisor, Anthony Neal, told her that he would overlook her being late if she would go out on a date with him. The plaintiff told Anthony, "no thank you."

20. After the plaintiff declined to go on a date with Anthony, he began changing the way he treated her. He became short and abrupt and displayed a bad attitude toward the plaintiff.

21. The plaintiff reported her concerns to Ayers, but when Ayers discussed the plaintiff's concerns with Anthony, his attitude worsened.

22. On August 5, 2014, the plaintiff spoke with Mitsubishi manager Mark Dawson ("Dawson"), after being harassed from March through August by Anthony.

23. Dawson acknowledged that he had heard rumors that Anthony had harassed other women.

24. On two subsequent occasions when the plaintiff called in to advise she would not be able to make it to work, Anthony asked her to go out on a date.

25. Further, during this time period, Anthony commented about the plaintiff's appearance in a flirtatious or sexual way, commenting about her hair, the way her clothes fit, etc.

26. When the plaintiff continued to refuse to go out with Anthony, he refused her requests to improve her working conditions or her requests to change to a preferable shift.

27. As a result of Anthony's attitude and continued harassment, the plaintiff asked to transfer to another shift. Her request was refused.

28. Thereafter, the plaintiff informed Anthony that her nephew had died and that she would be out of work to be with her family. Despite the fact that she had the right to take days off, and despite the fact that she handled her request in the manner prescribed by Mitsubishi, Anthony advised the plaintiff that she would be "written up" if she was absent.

29. The plaintiff took days to be with her family. Anthony again threatened to write her up unless she produced documentation that her nephew had in fact died. This demand was inconsistent with Mitsubishi policy for FMLA leave.

30. Anthony continued to discriminate against the plaintiff by refusing her request to change shifts so that she could avoid him. Therefore, on or around January 8, 2015, the plaintiff filed a complaint for sexual harassment and discrimination against Anthony as a result of the treatment she was receiving.

31. Later, in a meeting, Mitsubishi's representatives advised the plaintiff that after an investigation, Mitsubishi had determined that Anthony had done nothing in violation of its policies.

32. On February 11, 2015, Anthony wrote the plaintiff up for a corrective action due to an incident that occurred on February 8, 2015. Anthony stated that the plaintiff violated safety policies.

33. On March 1, 2015, the plaintiff dropped a roll of film off her forklift and damaged it. Anthony subsequently wrote the plaintiff up for a corrective action, in spite of the fact that she had never dropped a roll of film before and despite the fact that many other forklift operators had dropped rolls of film without consequence.

34. Despite numerous and repeated requests, the plaintiff was never allowed to transfer to another shift so as to avoid Anthony.

35. The plaintiff has never been given a reason why she was not transferred to a different shift.

36. The treatment the plaintiff received at her job continued despite numerous reports to her trainer and to agents of both defendants. While employed, the plaintiff remained fearful on the job daily.

37. As a result of the hostile environment at her workplace, the plaintiff began taking medication for depression and anxiety.

38. Mitsubishi ultimately terminated the plaintiff for another alleged safety violation.

**FOR A FIRST CAUSE OF ACTION**
**(Sexual Harassment/Discrimination in Violation of Title VII,**
**Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.)**

39. The plaintiff incorporates the preceding paragraphs as alleged above.

40. The defendants subjected the plaintiff to severe and pervasive sexual harassment and created a gender-based hostile working environment that altered the terms and conditions of her employment. This harassment included but was not limited to the following:

    a. Anthony's continued comments about her appearance;

    b. Anthony's continued demands that the plaintiff go out with him;

    c. Anthony's *quid pro quo* harassment, in that the plaintiff's refusal to go out with him resulted in his disparate treatment of her as compared to other employees; and,

    d. Mitsubishi's failure to protect the plaintiff from Anthony's unwanted advances, either by disciplining him once the plaintiff complained, or segregating the two of them.

41. The foregoing allegations are merely examples of the defendants' regular and repeated unlawful conduct, and are not intended to be an exhaustive account.

42. The above disparate treatment amounts to unlawful sexual harassment or discrimination prohibited by Title VII of the Civil Rights Act of 1964.

43. As a result of the defendants' conduct, the plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering.

44. The plaintiff is informed and believes that she is entitled to an award of actual and compensatory damages as well as punitive damages for the willful and intentional acts of the defendants through their agents and employees, and for reasonable attorney's fees and costs of this action.

## FOR A SECOND CAUSE OF ACTION
(**Retaliation in violation of Title VII, Civil Rights Act of 1964, 42 U.S.C. §§2000e** *et seq*.)

45. The plaintiff incorporates the preceding paragraphs as alleged above.

46. The plaintiff engaged in protected activities, including making internal complaints of unlawful harassment/discrimination by a co-worker, to both the defendants.

47. The defendants took adverse actions against the plaintiff with the purpose of retaliating against her because of her participation in the protected activities.

48. The adverse actions taken by the defendants include but are not limited to:

   a. Mitsubishi failed to address the plaintiff's complaints of sexual harassment and discrimination;

   b. Mitsubishi failed to adjust the plaintiff's shift so that she did not have to work with Anthony;

   c. Marketplace failed to address the plaintiff's complaints of sexual harassment and discrimination;

   d. Mitsubishi terminated the plaintiff's employment after she engaged in the protected activity;

   e. Marketplace assisting Mitsubishi in its termination of the plaintiff by escorting the plaintiff off Mitsubishi's premises; and,

   f. Marketplace was complicit in Mitsubishi's failure to protect the plaintiff from Anthony and took no affirmative steps to assist her.

49. These actions set forth are the result of a planned and concerted effort to retaliate against the plaintiff and to discourage her continued employment or to encourage her to resign.

50. As a result, the plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering.

51. The plaintiff is informed and believes she is entitled to an award of actual and compensatory damages as well as punitive damages for the willful and intentional acts of the defendants through their agents and employees, and for reasonable attorney's fees and costs of this action.

## FOR A THIRD CAUSE OF ACTION
**(Sexual Harassment/Discrimination in Violation of S.C. Code Ann. §§ 1-13-80, *et seq*.)**

52. The plaintiff incorporates the preceding paragraphs as alleged above.

53. The defendants subjected the plaintiff to severe and pervasive sexual harassment and created a gender-based hostile working environment that altered the terms and conditions of her employment. This harassment included but was not limited to the following:

   a. Anthony's continued comments about her appearance;

   b. Anthony's continued demands that the plaintiff go out with him;

   c. Anthony's *quid pro quo* harassment, in that the plaintiff's refusal to go out with him resulted in his disparate treatment of her as compared to other employees; and,

   d. Mitsubishi's failure to protect the plaintiff from Anthony's unwanted advances, either by disciplining him once the plaintiff complained, or segregating the two of them.

54. The foregoing allegations are merely examples of the defendants' regular and repeated unlawful conduct, and are not intended to be an exhaustive account.

55. The above disparate treatment amounts to unlawful sexual harassment or discrimination prohibited by the Constitution of the State of South Carolina, and by state statute, in particular S.C. Code, Ann., §§ 1-13-80, *et seq*.)

56. As a result of the defendants' conduct, the plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering.

57. The plaintiff is therefore informed and believes she is entitled to an award of actual and compensatory damages as well as punitive damages for the willful and intentional acts of the defendants through their agents and employees, and for reasonable attorney's fees and costs of this action.

## FOR A FOURTH CAUSE OF ACTION
**(Retaliation in Violation of S.C. Code Ann. §§ 1-13-80, *et seq*.)**

58. The plaintiff incorporates the preceding paragraphs as alleged above.

59. The plaintiff engaged in protected activities, including making internal complaints of unlawful harassment/discrimination by a co-worker, to both the defendants.

60. The defendants took adverse actions against the plaintiff with the purpose of retaliating against her because of her participation in the protected activities.

61. The adverse actions taken by the defendants include but are not limited to:

    a. Mitsubishi failed to address the plaintiff's complaints of sexual harassment and discrimination;

    b. Mitsubishi failed to adjust the plaintiff's shift so that she did not have to work with Anthony;

      c.      Marketplace failed to address the plaintiff's complaints of sexual harassment and discrimination;

      d.      Mitsubishi terminated the plaintiff's employment after she engaged in the protected activity;

      e.      Marketplace assisting Mitsubishi in its termination of the plaintiff by escorting the plaintiff off Mitsubishi's premises; and,

62. Marketplace was complicit in Mitsubishi's failure to protect the plaintiff from Anthony and took no affirmative steps to assist her.

63. These actions set forth are the result of a planned and concerted effort to retaliate against the plaintiff and to discourage her continued employment or to encourage her to resign.

64. The conduct of the defendants is impermissible, and unlawful and in violation of the premises of the Constitution and laws of the state of South Carolina, including but not limited to S.C. Code Ann. §§ 1-13-80, *et seq.*)

65. As a result, the plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering.

66. The plaintiff is therefore informed and believes that she is entitled to an award of actual and compensatory damages as well as punitive damages for the willful and intentional acts of the defendants through their agents and employees, and for reasonable attorney's fees and costs of this action.

**WHEREFORE**, having fully set forth her allegations against the defendants, the plaintiff respectfully prays that this Court enter judgment against the defendants for the following relief:

a. Awarding the plaintiff actual and compensatory damages for economic and non-economic injuries;

b. Awarding the plaintiff her costs and disbursements in this action, including reasonable attorneys' fees and costs, and expert fees and costs;

c. Awarding the plaintiff punitive damages, as permitted by law;

d. Awarding the plaintiff prejudgment and other interest on all monetary damages, as permitted by law; and

e. Granting the plaintiff such other and further relief as this Court may deem just and proper.

**MOONEYHAM BERRY, LLC**

s/Joe Mooneyham
Joe Mooneyham, Fed. Bar No. 3965
Post Office Box 8359
1225 S. Church Street (29605)
Greenville, South Carolina  29604
864.421.0036 Fax 864.421.9060
joe@mbllc.com

*Attorneys for Plaintiff*

Greenville, South Carolina
June 22, 2016